COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Petty
Argued at Alexandria, Virginia


WILLIAM COCHRAN HARRISON
                                                MEMORANDUM OPINION* BY
v.        Record No. 1864-06-4              JUDGE WILLIAM G. PETTY
                                                   AUGUST 28, 2007
EVELYN GREENE HARRISON


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald M. Haddock, Judge

Paul W. Mengel, III (Gregory L. Murphy; Vorys Sater
Seymour & Pease, on briefs), for appellant.

Marcia M. Maddox (Katharine W. Maddox; Morgan A. Leyh; Law
Office of Maddox, Cole & Miller, on brief), for appellee.


Appellant William Cochran Harrison (husband) challenges the trial court's equitable

distribution award, determination of child and spousal support, and award of attorney's fees to

Evelyn Greene Harrison (wife).  For the reasons stated below, we reverse in part, affirm in part, and

remand this case to the trial court for further proceedings consistent with this opinion.

I.  BACKGROUND

The parties were married in 1992, and the trial court entered a final divorce decree on July 6,

2006.  They have three minor children.  During the marriage, wife did not work outside the home,

but made significant non-monetary contributions to the marriage.  Husband made significant

monetary contributions to the marriage, having been very successful in his business.  The trial court

found that husband was a "successful entrepreneur . . . in the residential mortgage industry for a

number of years, in some years making in the half million dollar range" although at the time of the

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

divorce, he "had recently had some reverses, which appear to be at least in part the result of his inability to stay in a profitable relationship with his various business partners." As a result of these findings, the trial court imputed an annual income of $160,000 to husband, based on his recent average salary. The court also imputed an annual income of $20,000 to wife, noting her limited work experience and education. The trial court ordered husband to pay wife spousal support of $4,000 per month in order to "approximate her former standard of living for herself and the children." The court also ordered husband to pay child support in the amount of $1,033 per month.

In making its equitable distribution determination, the trial court found that the following assets were marital property: the marital residence, titled in wife's name and valued at $1,250,000, subject to a mortgage in wife's name for $445,658; a condominium in Wintergreen, Virginia, 99% titled in wife's name, and one percent titled jointly, valued at $320,000; three notes receivable from various parties, two of which were payable to husband and one to wife, worth a total of $109,500; a settlement paid to husband from Ameribanc, with a net value of $41,000; and two automobiles, both of which were titled in wife's name, which had a net value of $15,760 and $13,625, respectively.

The trial court also included husband's contingent, unlitigated claim for wrongful termination against his former employer, Pinnacle Financial Corporation (the Pinnacle claim), as marital property subject to distribution even though the trial court was unable to assign a value to it. Husband testified that the value of the Pinnacle claim was speculative at best, and he presented testimony from an expert witness that came to the same conclusion. Wife, on the other hand, argued that the trial court should "assign a value of some $2.8 million dollars to that claim." The trial court rejected wife's argument, explaining that it was "just not satisfied that enough evidence has been presented as to the validity and/or quantity of that claim to consider it as an amount that the [trial court] can actually deal with." However, the trial court included the claim as a marital asset and awarded it to husband. The trial court later explained, "If [the claim against Pinnacle] is worth

nothing in reality, and no one has represented to me that it was worth nothing, then [husband] is really taking a beating here." On the other hand, the court continued, "If Pinnacle is worth something, and it doesn't have to be worth anything like these numbers you all have been casting about, then Mr. Harrison will be all right." In valuing the notes receivable, the trial court "adopted the numbers on the wife's statement of property as the numbers . . . at which those notes should be valued."

The trial court also noted that the parties had considerable debt arising from unpaid taxes. The trial court stated that the tax debt "would be in excess of half a million dollars against the husband, and in excess of $200,000 against the wife, those claims being separate claims." While the tax claims against husband had to do with unreported income, the tax claims against wife arose from capital gains she incurred from the sale of one of the parties' houses located on Rehoboth Beach. The trial court ordered that husband was to be responsible for the tax claims resulting from his failure to report income, and wife was to be responsible for the tax claims arising from the capital gains on the sale of property. The trial court also noted that wife used $65,000 from the proceeds of the sale of that house to pay her lawyers.

The trial court distributed the marital assets as well. Wife received the marital home, the Wintergreen condominium, both automobiles, and the note receivable payable to her. In total, wife received assets with a net value of approximately $1,193,727. In addition to 100% of the future claim against Pinnacle, husband received the settlement from Ameribanc worth $41,000. He also received two notes receivable in the amounts of $46,000 and $23,500, respectively; and a $300,000 lump sum payment from wife, to be paid within one year of the final divorce decree and subject to offsets for his failure to pay spousal and child support. The trial court ordered the parties to resolve any remaining issues regarding the disposition of furnishings in the two homes by agreement. Husband was also ordered to pay wife $35,000 towards her attorney's fees.

II.  ANALYSIS

A.  Equitable Distribution

Husband argues that the trial court erred in determining the value of the parties' assets and in distributing the parties' assets and liabilities.  Specifically, husband argues that the trial court erred in failing to determine the value of the claim against Pinnacle Corporation and in its determination of the value of the parties' notes receivable.  Because we agree with husband's argument that the trial court erred in failing to value the Pinnacle claim, we reverse and remand for the trial court to determine the correct equitable distribution of the parties' property in light of our holding.[1]

The equitable distribution of marital property "rests within the sound discretion of the trial court."  Mir v. Mir, 39 Va. App. 119, 125, 571 S.E.2d 299, 302 (2002) (citation omitted).  We will disturb the trial court's decision only when the appellant can show that the trial court abused its discretion.  Id.  A trial court must follow three steps in making an equitable distribution of property.  First, the trial court "must classify the property as either separate or marital.  The court must then assign a value to the property based upon evidence presented by both parties.  Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)."  Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991); see also Code § 20-107.3(A).

In making its valuation findings, the trial court "must determine from the evidence that value which represents the property's intrinsic worth to the parties upon dissolution of the marriage."  Bosserman v. Bosserman, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989).  Because of the fact-specific nature of valuation, "we give great weight to the findings of the trial court."

---

[1] Husband argues that the distribution of liabilities was inequitable in light of the distribution of assets.  Because we reverse and remand this case for a redistribution of the marital assets, we need not address husband's arguments regarding the distribution of marital debts.

Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 518 (2000). "We affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation . . . ." Russell v. Russell, 11 Va. App. 411, 415-16, 399 S.E.2d 166, 168 (1990). The parties bear the burden to provide the trial court with sufficient evidence from which it can value their property. Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988).

### Notes Receivable

We hold that the trial court did not abuse its discretion in accepting wife's evidence as to the value of the notes receivable. Both parties presented evidence as to the value of the notes, including both testimony at trial, written submissions, and copies of the notes. The point of contention here is the loan from husband to a former employee. While the parties agreed that the note was originally for $46,000, husband stated at trial: "I think [the note] is uncollectible." On appeal, husband argues that the trial court erred when it did not discount the value of the note based on that testimony. Wife also testified as to the value of the note. Her uncontradicted testimony was that the loan was secured by the borrower's "deceased mother's diamond ring . . . and a painting and some other things . . . as collateral."

The trial court was not obliged to accept husband's somewhat speculative testimony regarding the uncollectibility of the note; rather, as the finder of fact, the trial court had the discretion to accept or reject any of his testimony. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). Further, wife testified that the note was secured by collateral. The trial court was free to accept this testimony and refuse to give husband a windfall by discounting the value of the note when it was secured by collateral. We affirm the trial court's valuation of the notes receivable.

Pinnacle Claim

We must, however, reverse and remand the trial court's decision to award the Pinnacle claim to husband. We reverse because the trial court specifically stated in its findings and in the divorce decree that it "lack[ed] sufficient evidence to determine [the] value" of the Pinnacle claim but then went on to include the claim with an unarticulated value in the distribution formula. Hence, the trial court erred when it divided the asset without first assigning a value to it. In coming to this decision, we hold that a marital asset whose value cannot be determined by the trial court when the parties have had opportunity to present evidence as to its value cannot be divided under our equitable distribution statute. See Morris v. Morris, 3 Va. App. 303, 308, 349 S.E.2d 661, 664 (1986) (affirming a trial court's refusal to consider husband's law practice as a marital asset subject to equitable distribution when there was insufficient evidence to determine its value, because "'[w]ithout value, there is no basis for monetary award'" (quoting Hodges v. Hodges, 2 Va. App. 508, 515, 347 S.E.2d 134, 138 (1986))).

Here, the trial court's findings were internally inconsistent. First, the trial court expressly found that it could not value the Pinnacle claim based on the evidence before it. However, the trial court also found that if the claim were worthless, husband was "taking a beating," but that if the claim were "worth something . . . then [husband] will be all right." Thus, the trial court indicated that while it could not actually assign a value to the Pinnacle claim, it believed that the claim had some indecipherable value that it took into account in the distribution of the parties' marital estate. These findings are speculative, and cannot form the basis of an equitable distribution award. See Taylor, 5 Va. App. at 443, 364 S.E.2d at 248 (The "trial judge's valuation cannot be based on mere guesswork."). We therefore remand this issue to the trial court for it to value the Pinnacle claim and make an equitable distribution of all of the parties' assets and liabilities based on its findings. Given the amount of time that will have elapsed between the original hearing and the

hearing on remand, the trial court should take evidence regarding the value of the claim at the time of the hearing on remand. See Robbins v. Robbins, 48 Va. App. 466, 474-75, 632 S.E.2d 615, 619-20 (2006) (reversing and remanding a trial court's equitable distribution award when it refused to consider the wife's proffered evidence indicating that the marital home had nearly doubled in value between the time of the evidentiary hearing on valuation and the final divorce decree); see also Rowe v. Rowe, 33 Va. App. 250, 263, 532 S.E.2d 908, 915 (2000) (The trial court should use "the most current and accurate information available" when valuing marital assets, so as to "avoi[d] inequitable results.").

On the other hand, if the trial court is unable to assign a value to the Pinnacle claim, the trial court should make its equitable distribution award using only the remaining assets and liabilities. Simply put, we hold that if a trial court is unable to assign a value to a particular item of marital property such that would allow it to make a reasonably equitable distribution of the marital assets and liabilities as a whole, that property cannot be included in the equitable distribution formula. To do so would omit a step in the equitable distribution scheme developed by the General Assembly, and constitute reversible error. See Code § 20-107.3(A); see also Alphin v. Alphin, 15 Va. App. 395, 404, 424 S.E.2d 572, 576 (1992); Swisher, Diehl & Cottrell, Family Law: Theory, Practice & Forms § 11.25(a) (2005 ed.) ("Where . . . evidence of value is insufficient to make a determination of value, the court is without authority to make an equitable distribution award based upon said property.").

In reaching this decision, we are persuaded by the reasoning of the North Carolina Court of Appeals in Grasty v. Grasty, 482 S.E.2d 752, 754 (N.C. App. 1997). There, the North Carolina Court of Appeals reversed a trial court's decision including a party's business interest in an equitable distribution when it did not first value the business interest. The trial court determined that it could not value the business interest because it found the defendant's evidence as to the value

"wholly incredible and without reasonable basis," and because plaintiff did not present any evidence of value. Id. As a part of its analysis, the Grasty court noted that "only those assets and debts that are classified as marital property and valued are subject to distribution" under the North Carolina equitable jurisdiction statute, id. at 755, a statement that accurately describes our three-step equitable distribution scheme as well. The North Carolina court reasoned that, because no value had been assigned to the business interest, the trial court erred when it included the asset in the distribution. Id. We reach the same conclusion here.

## B. Child and Spousal Support

Husband argues that the evidence in this case does not support the trial court's determination to impute an annual income of $169,000 to him for support purposes and that the trial court erred in imputing income to wife in the amount of $20,000 per year. We affirm the trial court's imputation of income to both parties.

"The decision to impute income is within the sound discretion of the trial court and its [decision] will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (citation omitted). In determining whether to impute income, "the trial court must consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children." Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citation omitted). The trial court's decision is presumed correct and will not be disturbed unless some injustice has been done. Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996) (citing Steinberg v. Steinberg, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990)).

Here, the trial court did not commit any injustice in its decisions concerning the imputation of income. The imputation of income to wife was based on husband's expert

witness' testimony that wife could currently make "anywhere from $19,000 to $30,000 a year even without further education." Moreover, the trial court noted that wife had limited education and work experience. Hence, the trial court's imputation of income to wife is adequately supported by credible evidence provided by husband's expert witness; we will not disturb it on appeal.

Further, the trial court did not err in imputing income of $169,000 to husband for support purposes. In Stubblebine, 22 Va. App. at 709, 473 S.E.2d at 75, this Court upheld a trial court's imputation of income based on husband's recent earnings history. There, the evidence revealed that husband had recently been employed as a consultant making $40,000 per year, although that kind of work was no longer available to him based on the economic market at that time. Here, the trial court heard testimony regarding husband's earning potential from wife's expert witness. The witness had analyzed husband's employment history and income over several years. While husband left his most recent position, the expert's written opinion showed that his annualized income would have been $162,222. Moreover, husband has started a new business venture, from which husband estimates his future income will be up to $657,925 per year; the expert witness testified that husband was likely to make $372,000 from May 2006 through May 2007 in this new venture. Thus, the trial court's imputation of $160,000 annual income to husband was reasonable in view of husband's prior earnings, education, and experience.[2]

_____

[2] Husband also received $9,000 per year from his family. He does not argue that the trial court erred in including this amount as income.

## B. Attorney's Fees

### At Trial

Husband also challenges the trial court's award of attorney's fees to wife for the proceedings below. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987) (citing Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976)). "The key to a proper award of counsel fees is reasonableness under all the circumstances." Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996) (citing McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)). The facts of this case evince no unusual circumstances that would warrant disturbance of the trial court's judgment; rather the trial court clearly stated that it was awarding attorney's fees to wife because she had sold marital property for the purpose of paying her attorney's fees below. See L.C.S. v. S.A.S., 19 Va. App. 709, 721, 453 S.E.2d 580, 587 (1995). We, therefore, affirm the trial court's order awarding attorney's fees for the proceedings below to wife.

### On Appeal

Husband also seeks attorney's fees associated with this appeal. It is clear that the "the appellate court [is] the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal . . . ." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). An appellate court is in the position "to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." Id. Reviewing the record of the proceedings as a whole, we conclude that wife should be responsible for husband's attorney's fees incurred on appeal because of the clear error in including an unvalued piece of property in the equitable distribution.

Accordingly, we remand this case to the trial court for determination and award of the appropriate appellate attorney's fees and costs.

### III. CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>